In re **MIDWEST MILK MONOPOLIZA-TION LITIGATION.**
**Robert B. ALEXANDER** et al.,
**Plaintiffs,**

v.

**NATIONAL FARMERS ORGANIZA-TION** et al., **Defendants.**

**No. 19191–1.**

United States District Court,
W. D. Missouri, W. D.

Dec. 16, 1975.

John C. Gage and Major W. Park, Jr., Gage, Tucker, Hodges, Kreamer, Kelly & Varner, Harry P. Thomson, Jr., and Geo. E. Leonard, Shughart, Thomson & Kilroy, Kansas City, Mo., for Robert B. Alexander and others, plus Mid-America Dairymen, Inc., a cooperative Corp.

Wm. H. Sanders and David Trowbridge, Blackwell, Sanders, Matheny, Weary & Lombardi, Worth Rowley, Rowley & Scott, Robert H. Kapp, David B. Lytle, and Gail Starling Marshall, Washington, D.C., Robert T. Cochran, Nashville, Tenn., for N.F.O. and individuals.

J. L. Parks, Winston, Strawn, Smith & Patterson, Chicago, Ill., Robert A. Goodman, Kansas City, Mo., for Beatrice Foods Co. and Boswell Dairies Co.

John C. Chernauskas, Gen. Counsel, Dept. of Agriculture, Washington, D.C., for Earl Butz, Secretary of U.S. Dept. of Agriculture.

Richard F. Mitchell, Atty. Tax. Div., Dept. of Justice, Washington, D.C., for Johnnie Walters, Comm. I.R.S.

Colvin A. Peterson, Jr., Watson, Ess, Marshall & Enggas, David R. Hardy, Shook, Hardy, Ottman, Mitchell & Bacon, Kansas City, Mo., Melville C. Williams, Kael B. Kennedy, Pope, Ballard, Kennedy, Shepard & Fowle, Martin F. Burns, Chicago, Ill., Stuart H. Russell, Oklahoma City, Okl., and Sidney Harris, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for Associated Milk Producers, Inc., Associated Reserve Standby Pool, a cooperative corp., and Wesley J. Johnson, Gary Hanman, Harold S. Nelson and David Parr.

Sidney C. Berde, Berde, Leonard & Weinblatt, St. Paul, Minn., Thomas J. Wheatley and Wm. M. Stapleton, Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Kansas City, Mo., for Central Milk Producers Cooperative.

## MEMORANDUM AND ORDER DENYING AMPI'S MOTION FOR TEMPORARY RESTRAINING ORDER

JOHN W. OLIVER, District Judge.

### I.

This case pends on the motion of Associated Milk Producers, Inc. [AMPI] for a temporary restraining order filed November 25, 1975 in which AMPI prayed that an order be entered to prevent the National Farmers Organization [NFO] from republishing in the 1975 issue of The NFO Reporter an article by one Louis Kohlmeier which was initially syndicated by the Chicago Tribune News Syndicate and published in the St. Paul, Minnesota Pioneer Press on November 11, 1975. AMPI's motion for a temporary restraining order also sought to prevent NFO from publishing two documents originally obtained from the files of The Houston Bank For Cooperatives pursuant to an agreed protective order entered by this Court on January 24, 1975.

AMPI's motion for a temporary restraining order was in support of an earlier motion which AMPI filed November 24, 1975. AMPI entitled that motion a "Motion To Enforce Injunction Issued by the Court On January 24, 1975, and To Take Appropriate Action For Breach of Said Order and Injunction." On December 1, 1975, The Houston Bank For Cooperatives filed a motion in which it joined AMPI's motion filed November 24, 1975. That motion sought the same relief prayed for in AMPI's motion and in addition sought to enjoin NFO from further alleged violations of various orders of this Court with respect to disclosure of documents produced pursuant to agreed protective orders. The Houston Bank also prayed that this Court hold in contempt the NFO, its counsel of record, and such other NFO employees and agents which the Court might find to have willfully violated various of the agreed protective orders under which The Houston Bank For Cooperatives made production.

In accordance with an agreement of all counsel, the Court set the matter for hearing on December 2, 1975.

At the outset of that hearing the Court granted a motion to intervene filed by Louis M. Kohlmeier, the author of the article, and the Reporters' Committee for Freedom of the Press.

At the close of the hearing the Court requested NFO counsel to advise it of any circumstances which might develop which would moot AMPI's motion for the temporary restraining order. The transcript of the proceedings held December 2, 1975 reflects that we stated of record: "I frankly do not anticipate [that circumstances would develop which would moot the motion], but if it does that is fine with me." In accordance with that request NFO counsel has advised the Court in a letter dated December 3, 1975, that the Editor of The NFO Reporter now intends to carry the text of the Kohlmeier column, the text of AMPI's President Elkins' letter commenting thereon, the text of any reply which Mr. Kohlmeier may choose to make, excerpts from the two challenged

documents, and a news story about how AMPI and The Houston Bank For Cooperatives attempted to suppress the republication of the Kohlmeier article in The NFO Reporter. In addition, NFO counsel advised this Court that the Editor of The NFO Reporter may "run a piece about the issues raised by NFO in the matter pending in the United States Court of Appeals for the Eighth Circuit regarding the AMPI consent decree." Counsel for Kohlmeier, in a letter dated December 9, 1975, forwarded to the Court a seven page document entitled "Reply of Louis M. Kohlmeier."

Pursuant to orders made at the close of the hearing on December 2, 1975, the Court has before it a stipulation of facts to which is attached an index of numerous exhibits upon which the various parties place reliance. Each of the parties filed lengthy briefs on December 8, 1975, to which are attached the various exhibits referred to in the stipulation.

We have carefully considered AMPI's motion for temporary restraining order, joined in by The Houston Bank For Cooperatives, the only matter which presently pends before the Court, and the briefs and other matters filed by the parties. We find and conclude for reasons we shall presently state that the motion for temporary restraining order should be denied. We do not reach any other question presented by AMPI's motion filed November 24, 1975, or by the motion filed by The Houston Bank For Cooperatives on December 1, 1975.

## II.

AMPI, in its last footnote on the final page of its suggestions filed December 8, 1975, accurately states that it should be recognized "that if a temporary restraining order is not granted and the Kohlmeier article is republished in The NFO Reporter, NFO [may] still [be] subject to contempt and sanctions for violation of the Court order and Local Rules." Although AMPI was invited to submit evidence in support of both its motion for temporary restraining order and its motion for temporary injunction, AMPI insisted that the Court consider only AMPI's motion for temporary restraining order. AMPI expressly reserved the right to introduce additional evidence in connection with its motion for injunction. [See pages 49–55 and 63 of the transcript of the December 2, 1975 proceeding.]

Although the construction which AMPI would have this Court place on the stipulation of undisputed facts is not as consistent as it might be, it is quite clear that there are no legitimate factual disputes which are relevant to the narrow question presented in regard to whether this Court should issue a temporary restraining order. No one contends that the Touche, Ross report, one of the documents involved, was not made a part of the public record by the order of this Court which directed that the portion of NFO's narrative statement which it elected to file *in camera* should be filed as any other pleading in the case. While AMPI contends on page 13 of its December 8, 1975 suggestions that "The Emmer memorandum [the second document involved] is not on the public record," it is clear that AMPI's argument is based upon its more limited contention that the Emmer memorandum "was never *legitimately* placed on the public record." [Page 4 of AMPI's December 8, 1975 suggestions. See also footnote on page 17 of AMPI's December 8, 1975 suggestions.] The brief filed December 8, 1975 by The Houston Bank For Cooperatives accurately summarized the factual circumstances when it stated that counsel for NFO "saw to it that the documents in question were filed in the public record . . . in an all too obvious effort to free up confidential material."

We recognize, of course, that NFO contends that neither it nor its counsel have acted in a "devious or self-serving manner" and that "accusations against NFO counsel with respect to the manner in which documents became matters of public record" are both unfounded and

unwarranted. [Page 6 of NFO's December 8, 1975 suggestions.] Regardless of how or why the Touche, Ross report and the Emmer memorandum were filed in this Court and in the Court of Appeals, there is no possible dispute that those documents did in fact become a part of the public record.

 The narrow question presented by AMPI's motion for temporary restraining order is whether the republication of Mr. Kohlmeier's article in NFO's house organ should be enjoined. AMPI concedes that many of the cases upon which it relies are "factually dissimilar" from the circumstances presented by this case. Indeed, AMPI cites the leading cases from the Supreme Court of the United States which affirm the First Amendment right of the press to report court proceedings regardless of how accurately or inaccurately the reporter may read and write about the public record. *Craig v. Harney,* 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546 (1947), one of the cases cited by AMPI, for example, concluded that "What transpires in the courtroom is public property. . . . Those who see and hear what transpired can report it with impunity." The notion that a reporter is free to report only that which "transpires in the courtroom," as distinguished from data in the open files of a court, is untenable. The First Amendment protects the right to report pleadings and other data contained in the open files maintained by the Clerk's office, all of which are available for examination by the general public. See cases cited in *Oliver*: Contempt by Publication and the First Amendment, printed in the booklet Speeches of the Fourth Annual Freedom of Information Conference, November 2–3, 1961, University of Missouri School of Journalism, Columbia, Missouri.

*Pell v. Procunier, Corrections Director,* 417 U.S. 817, 835, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), cited by AMPI, is inapposite. That case merely sustained the validity of a prison regulation which prohibited advance media examination of confidential prison files. That case was based on the rationale that the regulation was valid because it "does not deny the press access to sources of information available to members of the general public." It is difficult to imagine that the Supreme Court would not have concluded that First Amendment rights would have been abridged by a regulation which would have permitted members of the general public to examine particular prison records but which would have attempted to deny such a right to members of the press.

In spite of the charges, countercharges, and disclaimers made during the December 2, 1975 hearing and in the lengthy briefs filed thereafter, the legal question of whether the press has the right to report matters which appear in a public court record is no different now than it was when Mr. Kohlmeier's and the Committee for Freedom of the Press' motion for intervention was being discussed at the outset of the December 2, 1975 hearing. We stated then that NFO claims the "right to consult with newspaper people and to plant stories which they can continue to use in their Reporter for propaganda purposes consistent with the practice of both AMPI and NFO." We stated then, and we reiterate now, that "the point of the matter is that the Constitution of the United States quite likely guarantees that." See page 8 of the December 2, 1975 transcript.

To say that is not to say that some sanction other than banning the republication of the Kohlmeier article may not later be proper in an entirely different proceeding and at a decidedly later stage of the pending litigation. To say that is also not to say that the Court's denial of AMPI's temporary restraining order which seeks to enjoin republication of the Kohlmeier article may in any way be considered as determinative of any issues which may be presented by any action which The Houston Bank For Cooperatives may wish to maintain for any

alleged violation of the agreement it entered into with NFO under which the documents of that Bank were produced under protective orders during the discovery phase of this case.

### III.

■ The Houston Bank For Cooperatives specifically prays that NFO be enjoined from planting any more of its documents in the public record in alleged violation of the agreed protective orders. We have no idea whether NFO will attempt to make use of any more of the documents produced pursuant to agreed protective orders by The Houston Bank For Cooperatives and The St. Louis Bank For Cooperatives. We believe, however, that we are able to enter an order consistent with the suggestion contained in The Houston Bank For Cooperatives' December 8, 1975 brief, to prevent further difficulties in that regard.

For the reasons stated, it is hereby

Ordered (1) that AMPI's motion for temporary restraining order should be and the same is hereby denied. It is further

Ordered (2) that should NFO or any other party in the above entitled cause wish to file as a matter of public record in this or in any other court any document produced pursuant to the agreed protective orders of this Court by either The St. Louis Bank For Cooperatives or The Houston Bank For Cooperatives, which has not heretofore been made a matter of public record, any such party, including but not limited to NFO, shall first obtain the written consent of either of the Banks, as the case may be, and that failing to obtain such written consent, shall then seek an appropriate order of this Court under the circumstances. Any application for such an order shall be filed as a matter of public record but any document which is the subject of such application shall be filed *in camera*, pending the Court's determination of the question presented, and shall not be referred to in the application in a manner which will reveal the content of the document or documents involved.